## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

COLUMBUS LIFE INSURANCE
COMPANY,

          Plaintiff,

          v.

WILMINGTON TRUST, N.A., as
Securities Intermediary,

          Defendant.

WILMINGTON TRUST, N.A., as
Securities Intermediary,

          Counterclaim
          Plaintiff,

          v.

COLUMBUS LIFE INSURANCE
COMPANY,

          Counterclaim
          Defendant.

Civil Action No.

20-cv-07959 (JMV) (JRA)

***FILED UNDER TEMPORARY
SEAL***

**OPINION**

**José R. Almonte, U.S.M.J.¶**

      Plaintiff and Counterclaim-Defendant Columbus Life Insurance Company
("Columbus Life") moves to compel the production of documents from, and the re-
deposition of the corporate designee of, non-parties Viva Capital 4, LP ("Viva"),
Blackstone Tactical Opportunities Advisors, LLC ("TacOps"), and Preston Ventures,

1

LLC ("Preston") (collectively, the "Non-parties"), (the "Motion"). ECF Nos. 77, 79, 81. The Non-parties oppose the Motion. ECF Nos. 78, 80. The Court has conducted an *in camera* review of the challenged documents, considered the arguments in support of and in opposition to the Motion and decides the Motion without oral argument. *See* FED. R. CIV. P. 78; L.Civ.R. 78.1. For the reasons set forth below, Columbus Life's Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND AND PROCEDURAL HISTORY

### A. The Life Insurance Policy on the Life of Carl E. Goldman

This action arises out of a dispute as to whether a life insurance policy issued by Columbus Life is stranger-originated life insurance ("STOLI"). *See generally* Compl., ECF No. 1. Although STOLI takes many forms, the New Jersey Supreme Court in *Sun Life Assurance Co. v. Wells Fargo Bank, N.A. (Bergman)*, 208 A.3d 839, 850 (N.J. 2019), explained that "STOLIs commonly involve life insurance policies procured and financed by investors—strangers—who have no insurable interest in the life of the insured yet, from the outset, are the ultimate intended beneficiaries of the policy." In other words, STOLI is an illegal wager on human life under which "the sooner the insured dies, the greater the company's profit." *Id.* at 848 (citation omitted). A STOLI policy is void from the inception, meaning that the third-party without an insurable interest is not entitled to the benefits upon the death of the insured. *Id.* at 859.

The dispute between the parties revolves around a $5 million life insurance policy that Columbus Life issued in 2007 to insure the life of an individual, Carl E.

2

Goldman ("Goldman"), through a trust ostensibly established for estate planning (the "Policy"). *See* Compl. ¶¶ 5-6, 13, 21; ECF Nos. 1-2, 1-3. The application for the Policy represented, among other things, that the Goldman trust was the owner and beneficiary of the Policy. Compl. ¶ 6. But, according to Columbus Life, the Goldman trust was a sham because the true beneficiaries were investors who stood to gain $5 million from Goldman's death by placing an illegal wager on his life. *Id.* ¶¶ 21-25. Columbus Life claims that it did not know this information at the time, *id.* ¶ 23, and so it continued collecting premiums on the Policy.

The Policy then changed ownership and beneficiaries twice, first to an entity known as Life Trading Trust and then to Wilmington Trust, N.A. ("Wilmington"), as securities intermediary for Viva.[1]  *Id.* ¶ 16-17. Viva is a private investment fund without officers or employees. ECF No. 80 at 5 n.3. Columbus Life alleges that Viva is in the business of buying blocks of life insurance policies on the lives of senior citizens. ECF No. 79 at 1. In 2018, Viva purchased the Policy as part of a portfolio of forty-two (42) policies with an aggregate face value of $243,447,706.00 (the "Portfolio"). *See* ECF Nos. 79-2 at 65:4-8, 79-3 at 7.

When acquiring the Portfolio, Viva employed third-parties. TacOps served as Viva's investment manager, and Preston served as Viva's investment advisor. ECF No. 80 at 4. Preston conducted pre-acquisition due diligence on insurance policy portfolios acquired by Viva. *Id.* Preston, in turn, retained Red Hill Advisors, a consulting firm, to assist Preston with due diligence. *See* ECF No. 80-1 ¶ 10. In

---

[1] As securities intermediary, Wilmington maintains Viva's securities accounts pursuant to U.C.C. § 8-102(a)(14).

addition, the law firm Schulte Roth & Zabel LLP ("SRZ") assisted the Non-parties as outside counsel by performing legal diligence and analysis on Viva's portfolio acquisitions. ECF No. 80 at 4. Ultimately, Viva's board of directors made investment decisions based on recommendations from TacOps and Preston. ECF No. 80 at 5 n.3.

## B. The Motion to Compel

Goldman passed away on or about March 30, 2020. Compl. ¶ 18. His passing triggered this lawsuit, which Columbus Life filed on June 29, 2020, seeking declaratory judgment that the Policy is void *ab initio* as STOLI. *Id.* ¶¶ 19, 36. The lawsuit was filed against Wilmington who is litigating this case in a representative capacity on behalf of Viva pursuant to Rule 17(a)(1)(F) of the Federal Rules of Civil Procedure. In response, Wilmington filed counterclaims against Columbus Life on behalf of Viva for breach of contract, insurer bad faith, unjust enrichment, and negligent misrepresentation. *See generally* Countercls., ECF No. 37;[2] *see also* ECF No. 80 at 4. Wilmington seeks a return of any premiums paid on the Policy in connection with its unjust enrichment counterclaim. *See* Countercls. ¶ 63.

On August 10, 2021, Columbus Life served Rule 45 subpoenas on the Non-parties (Viva, Preston, and TacOps), seeking the production of documents concerning, among other things, Viva's insurable interest-related due diligence. ECF Nos. 79-5 to -7. On August 24, 2021, Viva served its responses and objections to Columbus Life's subpoena, denying possession of documents related to the Policy (including any

---

[2] Wilmington filed its amended answer pursuant to the District Court's April 30, 2021 Opinion and Order granting Columbus Life's motion to strike Wilmington's affirmative defenses and granting in part and denying in part Columbus Life's motion to dismiss Wilmington's counterclaims. *See* ECF Nos. 30, 31.

due diligence materials), and referring Columbus Life to TacOps and Preston "from whom responsive materials may be obtained pursuant to a subpoena." ECF No. 79-8 at 8-14. On August 24, 2021, TacOps and Preston also served their responses and objections to Columbus Life's document subpoenas, agreeing to produce non-privileged documents concerning the Policy generally, but objecting to the production of pre-acquisition due diligence-related materials on the basis of attorney-client privilege. *See* ECF Nos. 78-3 at 17-19, 78-4 at 17-19. On November 5, 2021, and January 13, 2022, TacOps and Preston made document productions consisting of non-privileged documents. ECF No. 80 at 5. They redacted those documents to omit non-responsive information allegedly unrelated to the Policy and Portfolio. *Id.* They also raised the attorney-client privilege as to any requests for information concerning diligence conducted by, or at the direction of, legal counsel in connection with the Policy's acquisition. *Id.*

On March 28, 2022, Viva served its responses and objections to Columbus Life's first set of interrogatories, stating that "any insurable interest related-diligence on the [P]ortfolio containing the Policy was handled by . . . SRZ." ECF No. 79-3 at 11. Viva further stated that it purchased the Policy believing it was valid at the time of acquisition based on an assessment that utilized SRZ's legal analysis as part of due diligence. *Id.* at 13. Ultimately, Viva refused to disclose whether it had identified any insurable interest-related issues or risks regarding the Policy or Portfolio on the ground that the information was protected by the attorney-client privilege. *Id.* at 11-14.

On June 1, 2022, Columbus Life served Rule 45 deposition subpoenas on the Non-parties seeking to depose a Rule 30(b)(6) corporate designee. *See, e.g.*, ECF No. 79-11. On June 10, 2022, TacOps and Preston produced their privilege logs listing documents withheld and redacted pursuant to the attorney-client privilege. ECF Nos. 79-9, 79-10. On July 1, 2022, Columbus Life deposed Preston CEO Jon Nelson ("Nelson") as the Non-parties' Rule 30(b)(6) witness. *See* ECF No. 79-2. SRZ appeared as counsel for Nelson on the Non-parties' behalf. *See id.* Throughout the deposition, SRZ objected to questions that SRZ claimed implicated information derived from privileged communications and legal advice. *See generally id.* On August 5, 2022, Columbus Life, Wilmington, and the Non-parties filed a joint letter notifying the Court, among other things, of a dispute regarding Nelson's deposition. *See generally* ECF No. 69.

On November 18, 2022, pursuant to the Court's Orders requiring formal briefing on the issue, ECF Nos. 72, 74, 75, Columbus Life filed the instant Motion seeking to compel the production of documents from, and the re-deposition of, the Non-parties' Rule 30(b)(6) witness. ECF Nos. 77, 79. Related to the production of documents, Columbus Life contends that: (i) the Non-parties improperly redacted or withheld documents as non-responsive; (ii) the challenged documents are not inherently attorney-client privileged because they consist of facts and communications with non-lawyers, third-parties, and attorneys serving in a non-legal capacity; and (iii) Wilmington and Viva waived any claims of attorney-client privilege over Viva's insurable interest-related diligence by placing those documents and

6

communications "in-issue" when they asserted a counterclaim for unjust enrichment and sought the return of premium payments. *See generally* ECF Nos. 79 at 16-30, 81. With regard to Nelson's re-deposition, Columbus Life argues that: (i) SRZ improperly objected to questions concerning Viva's pre-acquisition due diligence because the attorney-client privilege does not attach to factual due diligence—a non-lawyer business function—that Viva outsourced to SRZ; (ii) Nelson was unprepared and unable to answer questions concerning Viva's knowledge and actions concerning pre-acquisition diligence; and (iii) Wilmington and Viva should bear the cost of any court-ordered re-deposition due to SRZ's extensive use of heavy-handed speaking objections. *See* ECF Nos. 79 at 30-36, 81.

The Non-parties oppose the Motion. In response to Columbus Life's motion to compel the production of documents, the Non-parties contend that: (i) TacOps and Preston properly redacted their document productions to omit privileged and non-responsive information; (ii) the attorney-client privilege extends to employees and agents of Viva; (iii) Wilmington and Viva did not waive the attorney-client privilege by asserting a counterclaim for unjust enrichment and requesting a return of premium payments; (iv) *Bergman* does not provide for an "in-issue" waiver of privileged communications; and (v) Columbus Life has no need for privileged information. *See* ECF No. 80 at 7-27. In connection with Columbus Life's motion to compel the Non-parties' Rule 30(b)(6) re-deposition, the Non-parties argue that: (i) Nelson fully testified about all non-privileged, factual information that was reasonably available to the Non-parties; (ii) SRZ properly stated non-argumentative

and non-suggestive objections to Columbus Life's lines of questioning; and (iii) Columbus Life is not entitled to costs associated with any potential re-deposition. *Id.* at 27-40.

On March 20, 2023, this Court ordered Wilmington to submit the challenged documents identified in the Motion and detailed within TacOps's and Preston's privilege logs for *in camera* review. ECF No. 93. On April 3, 2023, Wilmington and the Non-parties complied.

## II.   MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS

### A. Legal Standard

The Federal Rules of Civil Procedure provide that a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). The material "need not be admissible in evidence to be discoverable." *Id.*; *see also Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000) ("[A]ll relevant material is discoverable unless an applicable evidentiary privilege is asserted."). Indeed, courts construe relevancy broader at the discovery stage and more liberally in favor of disclosure. *See Cont'l Cas. Co. v. J.M. Huber Corp.*, No. 13-cv-4298, 2016 WL 3509317, at *2 (D.N.J. June 27, 2016) (citing *Tele-Radio Sys. Ltd. v. De Forest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981)).

The scope of discovery under Rule 26 of the Federal Rules of Civil Procedure similarly applies to discovery sought from a non-party through a Rule 45 subpoena. *See* FED. R. CIV. P. 45(a)(1); *In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 501

(D.N.J. 2021); *accord E.S. by & through Sanchez v. Elizabeth Bd. of Educ.*, No. 20-cv-1027, 2022 WL 2106382, at *2 (D.N.J. June 10, 2022).  Pursuant to Rule 45, a non-party may be compelled by subpoena to produce documents, permit an inspection of records, or appear for a deposition.  *See* FED. R. CIV. P. 30(a)(1), 34(c), 45(d), (e).  However, "a non-party to litigation is afforded greater protection from discovery than a party." *Burgess v. Galloway*, No. 20-cv-06744, 2021 WL 2661290, at *3 (D.N.J. Jan. 28, 2021) (citation omitted).  Indeed, "[t]he standards for nonparty discovery require a stronger showing of relevance than for simple party discovery." *Stamy v. Packer*, 138 F.R.D. 412, 419 (D.N.J. 1990) (citations omitted).

A party may move to compel disclosure or discovery pursuant to Rule 37(a) of the Federal Rules of Civil Procedure.  However, the moving party bears the burden to show that the information sought is relevant.  *See Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000).  Ultimately, the district court "has broad discretion regarding the enforcement of subpoenas." *Tattle Tale Portable Alarm Sys., Inc. v. Calfee, Halter & Griswold, LLP*, No. 11-cv-7013, 2012 WL 1191214, at *3 (D.N.J. Apr. 10, 2012) (citation omitted).  The Court may limit discovery and resolve discovery disputes as it deems appropriate.  *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).  "Magistrate Judges are given wide discretion to manage cases and to limit discovery in appropriate circumstances." *Forest v. Corzine*, 757 F. Supp. 2d 473, 477 (D.N.J. 2010) (citations omitted).

**B. Unilateral Redactions for Relevancy**

Columbus Life seeks an order compelling the Non-parties to produce, in full and without redaction, the documents and communications listed in TacOps's and Preston's privilege logs. *See* ECF Nos. 79-9, 79-10. In opposition, the Non-parties rely on *Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, No. 12-cv-00787, 2017 WL 3624262, at *4-5 (D.N.J. Apr. 26, 2017), contending that "[t]he vast majority of the redacted information is not relevant to this litigation, is highly confidential, and falls outside the proper scope of discovery" and has therefore "been properly redacted as non-responsive." ECF No. 80 at 35. Comparing Cozen O'Connor (Columbus Life's legal counsel) to the direct competitors considered by the District Court in *Engage Healthcare*, the Non-parties theorize that Cozen O'Connor "is desperate to obtain information that is utterly irrelevant to this litigation so it can use that information for the purpose of prospecting for new clients and to generate new litigations." *Id.* at 36. Columbus Life, however, disputes the Non-parties' interpretation of *Engage Healthcare*, countering that "unilateral redactions" of this nature are improper and further objecting to the Non-parties' "unprofessional and unbecoming" characterization of Cozen O' Connor. ECF No. 81 at 13. On this topic, Columbus Life and the Non-parties set forth no additional legal authority for consideration.

In assessing *Engage Healthcare*, this Court disagrees with the Non-parties' analysis. There, the special master concluded that "parties may not unilaterally redact irrelevant pieces of information from responsive documents, but at the same

time are not required to turnover sensitive and proprietary information that is not relevant to the case to a competitor with familial ties and whose counsel also represents the competitor in multiple capacities[.]" *Engage Healthcare*, 2017 WL 3624262, at *5 (citing *Bartholomew v. Avalon Cap. Grp., Inc.*, 278 F.R.D. 441, 452 (D. Minn. 2011); *Bonnell v. Carnival Corp.*, No. 13-cv-22265, 2014 WL 10979823, at *4, n.6 (S.D. Fl. Jan. 31, 2014)).  Here, Columbus Life is not a competitor of Wilmington or Viva.[3]  Nor do the Non-Parties claim that the information sought is sensitive and proprietary.  Rather, they claim that the information includes highly confidential information concerning other policies and insured persons unrelated to the instant litigation.  *See* ECF No. 80 at 35-36.  In this regard, the Non-parties contend that this information must be protected from disclosure to prevent Cozen O'Connor—which is in the business of suing to invalidate insurance policies on behalf of insurance companies and decedents' estates—from misusing the information to prospect clients and generate new litigations.  *Id.*  The Court, however, will assume that Cozen O'Connor is fully aware of its obligations under the Discovery Confidentiality Order that it executed in this case.  *See* ECF No. 45.  Moreover, the Court is persuaded by Cozen O'Connor's representation that it intends to use the information to show that Viva purchases large quantities of premium financed policies and, therefore, cannot

---

[3] The Court disagrees with the Non-parties' contention that "frequent direct litigation adversaries" are akin to direct competitors.  *See* ECF No. 80 at 35.  In *Engage Healthcare*, the District Court emphasized the importance of protecting sensitive and proprietary information from disclosure to Plaintiffs who were Defendants' "archrivals" in the medical publishing industry and because Plaintiffs' principal and Defendants' principal were brothers.  *See Engage Healthcare*, 2017 WL 3624262, at *5. Here, Cozen O' Connor is not a party in this action (as counsel to Columbus Life), does not directly compete with Wilmington or Viva, and is therefore distinguishable from the parties considered by the *Engage Healthcare* Court.

credibly claim ignorance about the Policy or the risks Viva assumed when purchasing the Policy. *See* ECF No. 81 at 13-14. To ease the Non-parties' concerns, Cozen O'Connor has agreed, and the Court so orders, that personal identifying information can remain redacted. *See id.* This approach strikes the balance of providing Columbus Life what it needs to further its argument while also protecting the information of individuals and entities who have no relevant connection to this case.

The Court further notes that case law considered by *Engage Healthcare* and subsequent courts in this District makes clear that "unilateral redactions based on one party's subjective view of relevancy are improper." *Engage Healthcare*, 2017 WL 3624262, at *3 (collecting cases); *see General Motors LLC v. Ashton*, No. 20-cv-12659, 2023 WL 1765711, at *4-5 (D.N.J. Feb. 3, 2023) (discussing *Engage Healthcare* and finding unilateral relevancy redactions inappropriate); *Rodriguez-Ocasio v. Midland Credit Mgmt., Inc.*, No. 17-cv-3630, 2019 WL 3821769, at *2 (D.N.J. July 23, 2019) (affirming the magistrate judge's finding that unilateral redactions are improper). Moreover, Rule 34 of the Federal Rules of Civil Procedure—which governs the production of documents—provides for the production of entire "documents," rather than specific phrases, pictures, paragraphs, sentences, or words contained within a document. *See, e.g.*, FED. R. CIV. P. 34(a)(1)(A), (b)(2)(E). Thus, "courts view entire documents as either relevant or irrelevant; they do not weigh the relevance of particular provisions." *Rodriguez-Ocasio*, 2019 WL 3821769, at *2 (citations omitted).

Based on the foregoing, the Court finds that the Non-parties improperly

unilaterally redacted information contained within the challenged documents as non-responsive for relevancy. The Court will therefore consider the appropriateness of redactions only with respect to the Non-parties' assertions of attorney-client privilege. *See Engage Healthcare*, 2017 WL 3624262, at *3 n.3 (citing FED. R. CIV. P. 34(b)(2)(C)) (noting that "redactions based on assertions of privilege are proper").

### C. Attorney-Client Privilege

The Court next considers whether the challenged documents and communications are protected under the attorney-client privilege, and, if so, whether that protection has been waived. As a threshold matter, the Court recognizes, and the parties agree, that questions related to the attorney-client privilege in this case must be analyzed under New Jersey law because this Court retains jurisdiction based on the parties' diversity of citizenship. *See* ECF Nos. 69 at 3, 79 at 12; *see also* FED. R. EVID. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *Allen v. Banner Life Ins. Co.*, 340 F.R.D. 232, 237 n.3 (D.N.J. 2022) (citation omitted) ("When a case is based on federal diversity jurisdiction, courts are to decide issues of attorney-client privilege based on state law.").

"While the federal attorney-client privilege is absolute, the New Jersey state privilege is qualified." *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990) (citations omitted). New Jersey recognizes that the attorney-client privilege creates tension between two competing social values. On the one hand, "sound legal advice or advocacy serves public ends and rests on the need to 'encourage full and frank

13

communication between attorneys and their clients.'" *United Jersey Bank v. Wolosoff*, 483 A.2d 821, 825 (N.J. Super. Ct. App. Div. 1984) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).  On the other hand, the privilege at times may conflict with the goals of justice because it can "result[] in suppression of evidence and to that extent [it] is at war with the truth." *Id.* (citations omitted).  That is why New Jersey has placed guardrails and limitations around the attorney-client privilege.  Accordingly, the privilege "applies to communications (1) in which legal advice is sought, (2) from an attorney acting in his capacity as a legal advisor, (3) and the communication is made in confidence, (4) by the client." *Hedden v. Kean Univ.*, 82 A.3d 238, 244 (N.J. Super. Ct. App. Div. 2013) (citation omitted).  "Application of the privilege is . . . to be strictly construed to achieve its underlying purpose, in light of the reason for its assertion and the attorney's ethical obligations under the unique circumstances of each case." *Horon Holding Corp. v. McKenzie*, 775 A.2d 111, 116 (N.J. Super. Ct. App. Div. 2001) (citations omitted); *see also* N.J.R.E. 504 (providing that the privilege is limited to "communications between [a] lawyer and his client in the course of that relationship and in professional confidence"); *Paff v. Div. of Law*, 988 A.2d 1239, 1246 (Super. Ct. App. Div.) (citations and internal quotation marks omitted) ("The attorney-client privilege is of course limited to communications made to the attorney in his professional capacity."), *certif. denied*, 994 A.2d 1040 (N.J. 2010).

The privilege also extends to corporations and protects "communications between an attorney and the corporation's employees, including lower level

14

employees . . . where doing so would give effect to the purposes of the privilege." *Leonen*, 135 F.R.D. 94, 98 (D.N.J. 1990) (citing *Upjohn Co.*, 449 U.S. at 389) (applying New Jersey law). "E-mail exchanges are covered by the privilege like any other form of communication." *Stengart v. Loving Care Agency, Inc.*, 990 A.2d 650, 660 (N.J. 2010) (citation omitted). The burden of proving that a communication is protected by the attorney-client privilege lies with "the person or entity asserting the privilege[.]" *Hedden*, 82 A.3d at 245.

The attorney-client privilege is not without exceptions under New Jersey law. The privilege can be waived implicitly, as explained below. However, prior to assessing whether a waiver is applicable here, this Court must first determine whether the privilege attaches at all. Of particular importance are three issues that play an integral role in determining the applicability of the attorney-client privilege to the challenged documents: (i) whether SRZ's due diligence is protected by the attorney-client privilege; (ii) whether Viva waived its privilege by disclosing privileged information to third-parties Preston, TacOps, and Red Hill Advisors; and (iii) whether Viva, through Wilmington, waived the attorney-client privilege under the "in-issue" doctrine. Having conducted an *in camera* review of the challenged documents and communications through the lens of New Jersey law, the Court resolves these questions one at a time. *See Brugaletta v. Garcia*, 190 A.3d 419, 431 (N.J. 2018) (citation omitted) ("When a requesting party challenges an assertion of privilege, the court must undertake an *in camera* review of the purportedly privileged document[s] or information and make specific rulings as to the applicability of the

15

claimed privilege.").

> 1. <u>Whether SRZ's Due Diligence is Protected by the Attorney-Client Privilege</u>

Whether SRZ's communications and documents concerning due diligence are protected under the attorney-client privilege depends on whether SRZ performed a business or legal function. "Communications which relate to business rather than legal matters do not fall within the protection of the [attorney-client] privilege." *Leonen*, 135 F.R.D. at 98 (citations omitted). In the corporate context, differentiating between business and legal matters is particularly challenging. This is because "in the corporate community, legal advice is often intimately intertwined with and difficult to distinguish from business advice." *Margulis v. Hertz Corp.*, No. 14-cv-1209, 2017 WL 772336, at *5 (D.N.J. Feb. 28, 2017) (internal quotation marks omitted) (quoting *Leonen*, 135 F.R.D. at 98-99) (applying New Jersey law). Thus, to determine whether a communication is business or legal, courts should consider "whether the communication is designed to meet problems which can fairly be characterized as predominately legal." *Champion Painting Specialty Servs. Corp. v. Delaware River Port Auth.*, No. 21-cv-10146, 2022 WL 1217442, at *3 (D.N.J. Apr. 25, 2022) (quoting *Leonen*, 135 F.R.D. at 98-99). "[T]he claimant should demonstrate 'that the communication would not have been made but for the client's need for legal advice or services.'" *Margulis*, 2017 WL 772336, at *5 (quoting *Leonen*, 135 F.R.D. at 99).

Columbus Life contends that the attorney-client privilege does not protect SRZ's due diligence because "due diligence is a business function that is not protected

16

merely because it was outsourced to [SRZ]." ECF No. 79 at 24-26 (citing *Margulis*, 2017 WL 772336, at \*5); *see also* ECF No. 81 at 10-11. The Non-parties, however, argue that "[r]etaining counsel to address 'concern[s] regarding legal exposure' associated with a business transaction is a quintessential legal function," not a business function. ECF No. 80 at 19-22 (quoting *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 307-08 (D.N.J. 2008)) (applying federal common law). They emphasize that SRZ "was not retained . . . to advise on the financial advisability of the Portfolio acquisition[,]" but rather "to assess legal risks associated with the acquisition—for example, any legal exposure related to insurable interest risk[.]" ECF No. 80 at 21-22.

The Court finds the Non-parties' argument persuasive. It is apparent from the Court's review of the motion papers that Viva clearly defined SRZ's role to provide legal analysis and advice in connection with Viva's due diligence. *See* ECF No. 79-2 at 114:16-115:8 (defining SRZ's role as conducting legal diligence on the Policy and Portfolio), 119:3-121:2 (differentiating between the roles of SRZ, Preston, and TacOps). This included SRZ's assessments as to whether a particular policy held an insurable interest as a matter of law. *See* ECF Nos. 80 at 28, 79-2 at 236:9-21 (confirming that decisions concerning insurable interest issues or risk were based on SRZ's legal conclusions). These are legal issues requiring legal analysis and advice. Therefore, the Court finds that the Non-parties have sufficiently demonstrated that communications between Viva and SRZ would not have been made absent Viva's need for legal advice or services and that documents and communications containing SRZ's

17

legal advice and analysis are properly categorized as predominantly legal.  *See Margulis*, 2017 WL 772336, at *5; *La. Mun. Police Emps. Ret. Sys.*, 253 F.R.D. at 308-09 (citation omitted) (finding that, in the context of transactional due diligence, "legal advice may overlap with business advice . . . yet the advice will be privileged where it is predominantly legal").[4]  This finding is specifically applicable to the information redacted for privilege within Preston Privilege Log Nos. 3-4, 15, 17, 20, 22-23.  This information "reflect[s] the provision of legal advice from [SRZ]" relating to the Policy and Portfolio and is therefore privileged.  ECF No. 79-10.  However, the fact that this information is privileged does not end the analysis because the Court must still consider whether Viva waived its privilege under the in-issue doctrine, which is discussed below in Section II.C.3.

2. <u>Whether Viva Waived the Attorney-Client Privilege by Disclosing Privileged Information to Third-Parties</u>

The Court next considers whether Viva waived the attorney-client privilege by disclosing privileged information through communications with and between third-parties.  The relevant documents to this analysis are detailed at Preston Privilege Log Nos. 1-2, 5-14, 16, 18-19, 21, and 24-28 and TacOps Privilege Log Nos. 10-11 and 19-20.  *See* ECF Nos. 79-9, 79-10.  Columbus Life argues that Viva waived the attorney-client privilege by disclosing privileged information to Preston (Viva's

---

[4] Although *La. Mun. Police Emps. Ret. Sys.* required an application of federal common law, the District Court specifically distinguished between legal and business communications in transactional due diligence, which, in the context of the instant Motion, the Court finds particularly persuasive.  In contrast, Columbus Life relies on *Margulis*, which, while applying New Jersey state law, simply stands for the general proposition that business communications do not fall under the protection of the attorney-client privilege.  *See Margulis*, 2017 WL 772336, at *5.  The Court further notes that although New Jersey's privilege is qualified, "state courts recognize the same policies behind the privilege as do the federal courts."  *Leonen*, 135 F.R.D. at 98 (citations omitted).

investment advisor), TacOps (Viva's investment manager), and Red Hill Advisors (a third-party consulting firm that Preston hired to assist Preston with its due diligence on the Portfolio). *See* ECF Nos. 79 at 24-30, 81 at 12-13. The Non-parties, however, insist that the privilege extends to Preston and TacOps, which acted as necessary intermediaries and agents of Viva, and to Red Hill Advisors, which acted as a necessary intermediary and agent of Preston. *See* ECF No. 80 at 9-10, 22-26.

Generally, voluntary disclosure of privileged information by the holder of the privilege waives its protection. *See In re State Comm'n of Investigation Subpoena No. 5441*, 544 A.2d 893, 896 (N.J. Super. Ct. App. Div. 1998). However, counsel may share privileged information with third-parties and non-attorneys that are "necessary intermediaries and agents" without prompting a waiver of privilege. *Rivard v. Am. Home Prods., Inc.*, 917 A.2d 286, 300 (N.J. Super. Ct. App. Div. 2007) (quoting *State v. Davis*, 561 A.2d 1082, 1092 (1989)). These "necessary intermediaries have been held to include a psychiatrist retained by defense counsel, arson experts hired by defense counsel, a handwriting expert employed by defense counsel, and an engineering firm hired as a consultant for litigation assistance[.]" *Tractenberg v. Twp. of West Orange*, 4 A.3d 585, 598-99 (N.J. Super. Ct. App. Div. 2010) (internal citations and quotation marks omitted). Courts will also consider a third-party an agent of client or counsel if their "participation is reasonably necessary to facilitate the client's communication with a lawyer or another privileged person and if the client reasonably believes that the person will hold the communication in confidence." *Symetra Life Ins. Co. v. JJK 2016 Ins. Tr.*, No. 18-cv-12350, 2019 WL 4931231, at *3

(D.N.J. Oct. 7, 2019) (citing RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 70 cmt. f (Am. L. Inst. 2000)) (applying New Jersey law); *see also State v. Tapia*, 273 A.2d 769, 773 (N.J. Super. Ct. App. Div. 1971) (citations omitted) ("[T]he attorney-client privilege extends to any person who is or may be the agent of either the attorney or client."). The party claiming a third-party as an agent bears the burden to show the privilege has not been waived. *See State v. Ashley*, No. A-2504-18, 2021 WL 1828103, at *7 (N.J. Super. Ct. App. Div. May 7, 2021) (finding that a defendant "had the burden of establishing that communications between he and his attorney—or he and his attorney's agent—were made within the context of the attorney-client relationship").

### a. *Whether Preston and TacOps Qualify as Viva's Agents*

Applying these principles to the Non-parties, the Court is satisfied that Preston and TacOps qualify as Viva's agents for purposes of the attorney-client privilege analysis because their participation was reasonably necessary to facilitate Viva's communication with counsel. Preston and TacOps worked with Viva toward a common goal: to assist Viva with its pre-acquisition due diligence, which included assisting SRZ with its legal risk analysis. Serving as Viva's investment advisors, Preston employees were responsible for flagging "any information or issues that were relevant to or raised questions for the legal review and legal diligence, that legal counsel asked about, or that were relevant to another department's analysis." ECF No. 80-1 ¶ 3. Additionally, Preston employees were "responsible for incorporating any legal analysis received [from SRZ] that was relevant to their diligence review."

*Id.* Preston also provided SRZ with the data tape and documents relevant to SRZ's legal evaluation of the Policy. *See* ECF No. 79-2 at 30:20-33:5. These files were available to both Preston and SRZ employees, as needed, to assist in evaluating the Policy and Portfolio. *Id.* at 76:24-77:4.

TacOps, as Viva's investment manager, reviewed the information generated by Preston and SRZ to ultimately provide Viva with an informed recommendation as to which portfolios it should acquire. *Id.* at 45:12-24, 55:25-56:19. SRZ also generated documents that it provided to the Non-parties based on information received from Preston. For example, SRZ's legal risk conclusions (based on information obtained from Preston) were detailed within a document entitled "the diligence memo" that was provided to TacOps. *Id.* at 232:6-25. TacOps utilized this document when evaluating potential portfolio purchases on Viva's behalf. *Id.* at 222:3-232:25. Additionally, due diligence results from both Preston and SRZ were compiled in a single document entitled the "diligence checklist" that was provided to TacOps. *Id.* at 91:6-16.

Based on the foregoing, it is evident to this Court that communications between Preston, TacOps, and SRZ were necessary to facilitate the provision of legal advice to Viva in connection with its pre-acquisition due diligence. The Court therefore finds that Preston and TacOps acted as Viva's agents and that Viva did not waive the attorney-client privilege by disclosing certain communications to them. This applies specifically to Preston Privilege Log Nos. 1-2, 5-12, and 25-28, which consist of various email communications between SRZ and non-lawyer Preston

employees "reflecting [the] request for and/or the provision of legal advice from [SRZ] relating to" the Policy and/or Portfolio.  ECF No. 79-10 at 1, 3, 6-7.

The Court recognizes that some of these emails—Preston Privilege Nos. 1-2, 25, 26, 27, and 28—included recipients that Columbus Life identifies as "lower-level employees."  ECF No. 79 at 25-28.  However, disclosure to lower-level employees does not necessarily waive the attorney-client privilege.  Under federal common law applied in this District, "communications between an attorney and the corporation's employees, including lower level employees, will be afforded the protections of the privilege where doing so would give effect to the purposes of the privilege." *Leonen*, 135 F.R.D. at 98 (citing *Upjohn Co.*, 449 U.S. at 389).[5]  Thus, Preston did not waive the attorney-client privilege when it sent its employees, lower-level or otherwise, privileged information concerning SRZ's legal advice because it did so in furtherance of conducting Viva's due diligence, which included assessing the legal risk of purchasing the Policy and Portfolio.  This finding, however, does not end the analysis because the Court must still assess whether Viva waived the attorney-client privilege under the in-issue doctrine.

        b. *Whether the Attorney-Client Privilege Extends to Communications and Documents Transmitted between Non-Lawyer Employees of Preston and TacOps*

The Court must also consider whether the attorney-client privilege extends to communications and documents transmitted between non-lawyer employees of both

---

[5]  The Court refers to federal common law where New Jersey state law is lacking.  *See Leonen*, 135 F.R.D. at 98 (finding that "state courts recognize the same policies behind the privilege as do the federal courts").

22

Preston and TacOps.  It is well established that privileged communications and documents transmitted between a client's agents retain the attorney-client privilege so long as the communications were made "in confidence [and] for the purpose of obtaining or providing legal assistance for the client." *Ashland Inc. v. G-I Holdings Inc.*, No. A-4356-17T3, 2019 WL 1552750, at *2 (N.J. Super Ct. App. Div. Apr. 10, 2019) (quoting RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 68). "Waiver results only when a nonprivileged person learns the substance of a privileged communication." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 79(e).

The Court has reviewed TacOps Privilege Log Nos. 10-11 and 19-20, which consist of email communications and documents containing SRZ's legal advice and analysis that were transmitted between non-lawyer Preston and TacOps employees. *See* ECF Nos. 79-9 at 2-3; *see also* ECF No. 79-16 (the parent email that transmitted TacOps Privilege Log Nos. 19 and 20).  The redacted information in these documents and communications reflects SRZ's legal analysis concerning Viva's due diligence, which, as the Court has held, is privileged.  Because this privileged information was transmitted between Viva's privileged agents (Preston and TacOps) in furtherance of assisting Viva with its pre-acquisition due diligence, the Court finds that Viva did not waive the attorney-client privilege with respect to TacOps Privilege Log Nos. 10-11 and 19-20; however, the Court must still assess whether the in-issue doctrine requires production of these communications and documents.

       c. *Whether the Attorney-Client Privilege Extends to Communications Transmitted between Non-Lawyer Employees of Preston and Red Hill Advisors*

The Court next considers whether privileged information transmitted from Preston to Red Hill Advisors is protected by the attorney-client privilege. For the privilege to attach, the Court must determine whether Red Hill Advisors, like Preston and TacOps, falls within the protected class of "necessary intermediaries and agents." *Rivard*, 917 A.2d at 300. Here, however, the Non-parties have not met their burden of convincing this Court that Red Hill Advisors was a necessary intermediary and agent of Viva. Nor does the Court find that Preston's agency relationship with Viva extends from Preston to Red Hill Advisors. Red Hill Advisors is a third-party consulting firm that, per Nelson's declaration, Preston retained to assist with Preston's due diligence and was "responsible for flagging anything unusual that would have required additional review." *See* ECF Nos. 80 at 25-26, 80-1 ¶ 10. In contrast to Preston, who performed its work on behalf of Viva, Red Hill Advisors performed its work on behalf of Preston. *See* ECF No. 80-1 ¶ 10. Although Red Hill Advisors may have assisted with Viva's due diligence, the Non-parties have not explained in a convincing way why, or how, Red Hill Advisors' involvement was reasonably necessary to facilitate communications between Viva and its counsel, SRZ. Indeed, apart from Nelson's declaration and the Non-parties conclusory assertion that Red Hill Advisors acted as Preston's agent, the Non-parties have presented insufficient evidence to show that Red Hill Advisors' participation was reasonably necessary to facilitate Viva's communication with SRZ and/or Preston and

that Viva reasonably believed that Red Hill Advisors would hold privileged communications in confidence.[6] *See Symetra Life Ins. Co.*, 2019 WL 4931231, at *3. Recognizing that New Jersey law requires that the attorney-client privilege be strictly construed, *see Paff*, 988 A.2d at 1245, the Court finds Red Hill Advisors' relationship with Preston too far attenuated from that of Viva and SRZ to warrant an extension of the agency relationship or the attorney-client privilege.

Turning to the specific documents in dispute, the Court has analyzed Preston Privilege Log Nos. 13-14, 16, 18-19, 21, and 24, which Preston describes as "[s]preadsheet[s] concerning due diligence . . . which reflects the provision of legal advice from outside counsel [SRZ] relating to, among other things, legal risk and analysis of the . . . [P]olicy[.]" *See* ECF No. 79-10 at 3-6. The Court need not determine whether the redacted information in these spreadsheets is attorney-client privileged because even if the information is privileged, Preston waived that privilege when it voluntarily transmitted the information to Red Hill Advisors, a nonprivileged third-party. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 79(e) ("Waiver results only when a nonprivileged person learns the substance of a privileged communication."), 79 cmt. g ("To constitute waiver, a disclosure must be voluntary."). Accordingly, the Court finds that Preston Privilege Log Nos. 13-14, 16,

---

[6] The Non-parties did not provide this Court with the challenged communications transmitted from Preston to Red Hill Advisors for this Court's *in camera* review. Although Preston's privilege log describes the documents substantively, it does not specify the email addresses to whom the documents were transmitted. *See* ECF No. 79-10 at 3-6. Thus, the Court relies upon Columbus Life's submission at ECF No. 79-17—which depicts an email sent by Jamie Anderson, Preston's Senior Manager, to Red Hill Advisors that includes an excel spreadsheet attachment—and the Non-parties' confirmation through their opposition brief that communications and documents were sent by non-lawyers at Preston to non-lawyers at Red Hill Advisors, ECF No. 80 at 25-26.

18-19, 21, and 24 are not protected by the attorney-client privilege.  Because the Non-parties did not provide the Court with copies of these documents for *in camera* review, the Court is unable to determine whether they are relevant to the claims and defenses raised in this action.  Columbus Life, Wilmington, and the Non-parties shall meet and confer to discuss the relevancy of these documents.  To the extent there is a dispute, the parties shall file a joint letter consistent with the Court's Case Management Order available online.

  3. <u>Whether Wilmington/Viva Waived the Attorney-Client Privilege under the "In-Issue" Doctrine</u>

Turning to the documents and communications that *are* attorney-client privileged—namely, the identified due diligence documents and communications transmitted between SRZ, Preston, and TacOps—the Court next assesses whether Viva waived its privilege with respect to Preston Privilege Log Nos. 1-4, 5-12, 15, 17, 20, 22-23, and 25-28 and TacOps Privilege Log Nos. 10-11 and 19-20.  The crux of Columbus Life and the Non-parties' dispute revolves around the "in-issue" waiver doctrine.  The doctrine provides that "the attorney-client shield may be pierced when confidential communications are made a material issue by virtue of the allegations in the pleadings and where such information cannot be secured from any less intrusive source." *Wolosoff*, 483 A.2d at 823; *see also Payton v. New Jersey Tpk. Auth.*, 691 A.2d 321, 335 (N.J. 1997).  This waiver, however, does not operate automatically based on the cause of action pled.  *See Kinsella v. Kinsella*, 696 A.2d 556, 569 (N.J. 1997).  To determine whether the in-issue doctrine applies, New Jersey courts consider the *Kozlov* test, which provides that

three foundations must be established by the party seeking to pierce the privilege: (1) there must be a legitimate need for the evidence; (2) the evidence must be relevant and material to the issue before the court; and (3) by a fair preponderance of the evidence, the party must show that the information cannot be secured from any less intrusive source.

*Hertz Corp. v. Frissora*, No. 19-cv-8927, 2020 WL 6616091, at *3 (D.N.J. Nov. 12, 2020) (citing *In re Kozlov*, 398 A.2d 882, 887 (N.J. 1979)).  In recent years, a party's ability to establish the "need" prong of the *Kozlov* test has been limited to narrow circumstances "(1) where a constitutional right is at stake, or (2) a party has explicitly or implicitly waived the privilege."  *State v. Mauti*, 33 A.3d 1216, 1228 (N.J. 2012) (finding that *Kozlov* and *Kinsella* establish this narrow set of circumstances).   In *Mauti*, the New Jersey Supreme Court recognized that "a privilege may be waived 'implicitly' where a party puts a confidential communication 'in issue' in a litigation." *Id.* at 1223-24 (quoting *Kinsella*, 696 A.2d at 568-69).  Ultimately, the *Mauti* Court concluded that "the party who places a confidential communication in issue voluntarily creates the 'need' for disclosure of those confidences to the adversary."  *Id.* at 1224.

Columbus Life contends that "Wilmington and Viva waived the right to assert [the attorney-client] privilege by asserting a counterclaim for a premium refund." ECF No. 79 at 16.  Citing to the New Jersey Supreme Court's decision in *Bergman*, 208 A.3d at 859, Columbus Life argues that Viva's due diligence became a material issue subject to the in-issue waiver doctrine concerning confidential communications when Wilmington/Viva asserted the counterclaim.  *See* ECF No. 79 at 7-24.   In

27

opposition, the Non-parties contest the applicability of the in-issue doctrine,[7] while simultaneously contending that if the in-issue doctrine does apply, the waiver is bi-lateral.  *See* ECF No. 80 at 10-19.  To resolve this issue, the Court will analyze the *Kozlov* prongs.

Columbus Life satisfies the first and second prongs of the *Kozlov* test—the legitimate need for relevant and material evidence—by virtue of Wilmington's counterclaim for unjust enrichment and for the return of premium payments.  In *Bergman*, the New Jersey Supreme Court held that: (1) in New Jersey, STOLI policies are considered void *ab initio*, and (2) a party may be entitled to a refund of premium payments on a void STOLI policy.  *See Bergman*, 208 A.3d at 859.  The issue presently before the Court requires consideration of the latter.  When fashioning a remedy for a void STOLI policy, including whether a return of premium payments is warranted, the *Bergman* Court found that "trial courts should develop a record and balance the relevant equitable factors . . . includ[ing] a party's level of culpability, its participation in or knowledge of the illicit scheme, and its failure to notice red flags."  *Id.*

---

[7] On this topic, the Non-parties cite to *Ngai v. Old Navy*, No. 07-5653, 2009 WL 2391282, at *5 n.12 (D.N.J. July 31, 2009) for the proposition that the in-issue doctrine "operates only where a party asserts a claim or defense it intends to prove using privileged materials and has injected those privileged communications into the action."  ECF No. 80 at 10.  The Court finds the Non-parties' recitation of law inaccurate.  In making its finding, the District Court in *Ngai* relied on *Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66, 71 (D.N.J. 1992).  And although the *Pittston* Court ultimately found the in-issue doctrine inapplicable because the plaintiff did not seek to use or inject privileged documents into the action, the District Court emphasized that the "injection" factor was not required under *Wolosoff*, 483 A.2d at 828-28.  Indeed, "the *Wolosoff* court did not explicitly include as a factor that the party seeking protection must have injected the communications into the action[.]"  *Pittston*, 143 F.R.D. at 71.  Rather, the Court considered it to be an "important issue."  *Id.*  Whether Wilmington and/or Viva injected privileged communications into this action is therefore not dispositive as to the applicability of the in-issue doctrine.

Here, by asserting its request for a return of premium payments (in connection with its counterclaim for unjust enrichment), Viva, through Wilmington, voluntarily established the "need" for disclosure of Viva's due diligence materials. *See Mauti*, 33 A.3d at 1224. And while *Bergman*, as the Non-parties correctly note, did not delve into issues of privilege, it *did* clearly state that culpability, red flags, and knowledge are equitable factors that must be balanced when assessing whether a return of premium payments is warranted. *See Bergman*, 208 A.3d at 859. The "equitable factors" are not just relevant, they are necessary to determine whether "a party may be entitled to a refund of premium payments it made on a void STOLI policy, particularly a later purchaser who was not involved in any illicit conduct." *Id.* Viva's due diligence materials—which may include evidence of Viva's culpability, knowledge of the illicit scheme, and/or failure to notice red flags—are therefore relevant and material to determining whether Viva, through Wilmington, is entitled to a return of premium payments in connection with its counterclaim for unjust enrichment.[8]

Columbus Life also satisfies the third prong of the *Kozlov* test because "the information could not be secured from any less intrusive source." *In re Kozlov*, 398 A.2d at 887-88 (citation, internal editing marks, and emphasis omitted). Viva outsourced part of its due diligence to SRZ and ultimately acquired the Policy based upon SRZ's conclusion that the Policy was valid and had no "insurable interest-related issues or risks or carrier challenge issues or risks[.]" ECF No. 79-3 at 13. In

---

[8] The Court does not hold that *Bergman* itself requires a privilege waiver, but rather that, under *Kozlov*, SRZ's due diligence assessment is relevant and material to determining whether Wilmington is entitled to a return of premium payments.

other words, Viva retained SRZ to assess any "red flags" associated with Viva's acquisition of the Policy.

The Non-parties argue that Wilmington does not intend to rely upon SRZ's due diligence in its defense and that the information Columbus Life seeks is contained within Nelson's testimony and non-privileged documents previously produced. *See* ECF No. 80 at 12-13. The Court is not persuaded by that argument. Nelson testified that he concluded that there were no known red flags to Viva.[9] Similarly, some of the documents include representations from Goldman and Viva that the Policy was not premium financed. *See* ECF Nos. 78-9, 78-10 at 218:23-219:5, 79-2 at 97:15-18. The Court has reviewed the documents identified by the Non-parties which, although relevant, do not fully answer the main question in dispute—what did Viva know prior to acquiring the Policy? This is particularly important given that, by Viva's own admission in response to interrogatories, it relied on SRZ's due diligence before acquiring the Portfolio:

> Viva further states that the details of this assessment and the reasoning behind its decision to acquire the Portfolio after conducting this assessment reflect attorney-client communications, **including legal analysis that was conducted by counsel as part of due diligence**, and therefore, Viva will not disclose it.

ECF No. 79-3 at 13 (emphasis added). Although Wilmington has produced testimony

---

[9] As stated in Nelson's deposition: "Q: In this case, did Preston or the companies recognize whether or not . . . the Goldman policy, was premium financed? A: Yes. Q: And what did the companies recognize about whether this policy had been premium financed? A: We did not have any evidence that this policy was premium financed and recorded it as such. Q: Okay. And just to be clear, that's what the companies believed during the pre-acquisition diligence? A: correct." ECF No. 79-2 at 97:11-23.

and documents that favor its conclusion, Columbus Life is entitled to test that conclusion by reviewing the underlying due diligence documents. Wilmington/Viva may not assert a counterclaim and then rely on privilege to avoid producing the information necessary to adjudicate that same counterclaim. *See Payton*, 691 A.2d at 335 (citing *Wolosoff*, 483 A.2d at 827-28) ("A party may not abuse a privilege, including the attorney-client privilege, by asserting a claim or defense and then refusing to provide the information underlying that claim or defense based on the privilege."). Moreover, the legal authority that the Non-parties rely on—namely, *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851 (3d Cir. 1994) and its progeny—does not control this analysis because the *Rhone-Poulenc Rorer* Court assessed the attorney-client privilege under Pennsylvania state law and did not consider the *Kozlov* test under New Jersey state law.[10] *See* ECF No. 80 at 11 n.7, 11-12. Accordingly, by assessing *Kozlov* through the lens of *Bergman*, the Court finds that Viva implicitly waived the attorney-client privilege when Wilmington requested a return of premium payments in connection with its counterclaim for unjust enrichment. Wilmington's counterclaim placed Viva's culpability and knowledge in-

---

[10] The Court, however, is mindful of its obligation to consider Third Circuit jurisprudence. In *Rhone-Poulenc Rorer*, the Third Circuit held that "a party does not lose the privilege to protect attorney client communications from disclosure in discovery when his or her state of mind is put in issue in the action[,]" but that the privilege may be waived when the client has made a conscious decision to inject the advice of counsel as an issue in the litigation." *See Rhone-Poulenc Rorer*, 56 F.3d at 863-64. However, the Third Circuit subsequently limited *Rhone-Poulenc Rorer* to the "unique facts of that case" where "advice of counsel was not raised as an affirmative defense nor were there any acts evincing a clear intent to waive the attorney-client privilege by placing at issue reliance on the advice of counsel." *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 486 (3d Cir. 1995) (applying Pennsylvania state law). Here, although Wilmington does not explicitly state that its counterclaim is supported by attorney-client communications, Viva did rely on SRZ's due diligence when purchasing the Policy and, as discussed, the *Bergman* holding has placed Viva's due diligence in issue. *Rhone-Poulenc Rorer* is therefore distinguishable from the facts and circumstances presented in this case.

issue; therefore, SRZ's due diligence documents and communications must be disclosed.

In a similar vein, Columbus Life's culpability and knowledge is also relevant and material to assess whether a return of premium payments is warranted. *See Bergman*, 208 A.3d at 859 (citing *Carton v. B&B Equities Grp., LLC*, 827 F. Supp. 2d 1235, 1239-40 (D. Nev. 2011)) (finding the relative culpability of *both* parties relevant to a claim for unjust enrichment); *see also Columbus Life Ins. Co. v. Wells Fargo Bank, N.A.*, No. 20-cv-833, 2021 WL 106919, at *7 (D. Del. Jan. 12, 2021) (comparing Delaware state law to New Jersey state law in assessing the relative culpability of both parties in connection with a party's ability to recover premium payments made on a void STOLI policy). However, to the extent the Non-parties contend that the in-issue waiver bilaterally applies to Columbus Life, *see* ECF No. 80 at 16 n.9., the Court finds that it lacks sufficient information regarding the methods by which Columbus Life conducted its due diligence to make such a determination at this time.

Based on the foregoing, the Court finds that Viva waived its privilege by placing the following documents and communications in issue in this litigation: (i) Preston Privilege Log Nos. 1-2, 5-12, and 25-28 (email communications between SRZ and non-lawyer Preston employees that include privileged information "reflecting [the] request for and/or the provision of legal advice from [SRZ] relating to" the Policy and/or Portfolio); (ii) Preston Privilege Log Nos. 3, 4, 15, 17, 20, and 22-23 (privileged documents incorporating SRZ's pre-acquisition due diligence concerning legal risk); and (iii) TacOps Privilege Log Nos. 10-11 and 19-20 (email communications and

documents transmitted between non-lawyer Preston and TacOps employees containing SRZ's legal advice and analysis). *See* ECF Nos. 79-9, 79-10.

### D. Invoices

The parties dispute whether certain invoices are discoverable. TacOps Privilege Log Nos. 1-9 and 12-18 are documents described as "[d]escriptions of legal work performed by outside counsel." *See* ECF Nos. 79-9, 80 at 23-24. That description, however, mischaracterizes the true nature of the documents. For example, TacOps Privilege Log No. 8 consists of forty-two (42) pages, some of which include invoices from non-lawyers and some from various law firms.

Generally, legal invoices are unlikely to contain information protected under the attorney-client privilege. *See Hunterdon Cnty. Policemen's Benevolent Ass'n Loc. 188 v. Twp. of Franklin*, 669 A.2d 299, 302 (N.J. Super. Ct. App. Div. 1996) (finding that N.J.S.A. 2A:84A-20 "does not apply to insulate billings from disclosure"). Nevertheless, "where appropriate," the Court may review billing documents "to assure that no bill contains confidential matter protected by the privilege." *Id.* Entries containing "confidential information, trial strategy, or work product" may be redacted for production. *See Mears v. Borough of Lawnside*, No. A-2956-19, 2022 WL 363845, at *3-4 (N.J. Super. Ct. App. Div. Feb. 8, 2022). Applying these principles to TacOps Privilege Log Nos. 1-9 and 12-18, the Court finds the attorney-client privilege applicable to the legal invoices issued by law firms but only with respect to the "activities" and "description[s]" of legal services, which the Court finds are adequately detailed to contain attorney work-product. In contrast, the Non-parties have not

33

advanced an argument that convinces this Court that the remaining invoices—the ones issued by non-lawyers—should be protected under the attorney-client privilege. Therefore, the Court finds that the non-legal invoices are not privileged.

The issue remains whether the invoices are relevant and proportional to the needs of the case. The Non-parties argue that the legal invoices have no bearing on either party's claim or defense. *See* ECF No. 80 at 23-25. Columbus Life has remained silent on this issue. Without more, the Court cannot properly assess whether the invoices are relevant. Columbus Life, Wilmington, and the Non-Parties are ordered to meet and confer about the relevancy of these documents considering the legal principles and conclusions set forth in this Opinion. To the extent there is a dispute, the parties may raise it via joint letter in accordance with the Court's Case Management Order.

## III.    MOTION TO COMPEL RE-DEPOSITION

### A. Legal Standard

Rule 30(b)(6) of the Federal Rules Civil Procedure allows organizations to designate one or more persons to testify on their behalf. Importantly, the Rule 30(b)(6) witness "must testify about information known or reasonably available to the organization." FED. R. CIV. P. 30(b)(6). That witness's testimony "goes beyond the deponent's personal knowledge about the topics" and is binding on the organizational entity. *In re Neurontin Antitrust Litig.*, No. 02-cv-1390, 2011 WL 253434, at *6 (D.N.J. Jan. 25, 2011) (citations omitted). Indeed, "corporations, partnerships, and joint ventures have a duty to make a conscientious, good-faith effort to designate

knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter." *Black Horse Lane Assocs., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 303 (3d Cir. 2000) (quoting *Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 639 (D. Kan. 1999)). "[I]t is also clear that a designee may not refuse to disclose a fact communicated to the designee by a lawyer." *Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, No. 12-cv-00787, 2017 WL 9481037, at *2 (D.N.J. Oct. 30, 2017) (citation omitted).

When seeking a re-deposition, a party must obtain leave of court. *See* FED. R. CIV. P. 30(a)(2)(A)(ii). Generally, re-opening a deposition is disfavored. However, a party may be re-deposed when the party seeking the deposition shows good cause that intervening circumstances have occurred or that the deponent party has, among other things, failed to disclose relevant information, impeded or delayed the deposition, or produced documents in an untimely manner. *See Hibbert v. Bellmawr Park Mut. Hous. Corp.*, No. 10-cv-5386, 2013 WL 3949024, at *3 (D.N.J. Aug. 1, 2013) (collecting cases); *Rodriguez v. Delta Air Lines, Inc.*, No. 04-cv-750, 2005 WL 8165155, at *2 (D.N.J. July 22, 2005).

During a deposition, attorneys are prohibited from making comments that may suggest or limit a witness's answer to an unobjectionable question. *See In re Neurontin Antitrust Litig.*, 2011 WL 253434, at *11 (quoting *Hall v. Clifton Precision*, 150 F.R.D. 525, 531 (E.D. Pa. 1993)). Pursuant to Rule 37(d) of the Federal Rules of Civil Procedure, a court may impose sanctions on a party for inappropriate attorney conduct or for producing an unprepared Rule 30(b)(6) witness. *See Wachtel v. Health*

*Net, Inc.*, 239 F.R.D. 81, 84 (D.N.J. 2006); *Yerkes v. Weiss*, 17-cv-2493, 2019 WL 12056384, at *3 (D.N.J. Sept. 30, 2019) (collecting cases).

### B. Analysis

Columbus Life seeks an order compelling the Non-parties to produce an adequately prepared Rule 30(b)(6) witness for re-deposition concerning Viva's due diligence. *See* ECF No. 79 at 30-33. If granted, Columbus Life further requests that Wilmington/Viva be ordered to pay the costs associated with the re-deposition. *Id.* at 33-36. Much of Columbus Life's discontent arises from Nelson's refusal, on the advice of counsel, to respond to questions concerning Viva's understanding (when it acquired the Policy in 2018) that the decision in *Bergman* would impact the risk of insurable interest challenges from insurers. *See* ECF No. 79 at 31-32 (citing *Sun Life Assurance Co. v. Wells Fargo Bank, N.A.*, Nos. 16-4337, 16-4387, 2018 WL 5303551 (3d Cir. 2018)) (certifying the questions considered in *Bergman*). Additionally, Columbus Life argues that SRZ improperly asserted privilege objections to questions requiring a factual response and that Nelson was unprepared to answer due diligence questions specific to the Policy. *See id.* at 8-10, 31-33. The Non-parties oppose any re-deposition, contending that SRZ properly asserted objections in response to questions that "required disclosure of legal analysis or privileged communications and could not be answered without testifying about the legal advice or privileged communications." ECF No. 80 at 27-32. The Non-parties further assert that the information sought by Columbus Life concerns institutional knowledge that no longer exists and is therefore no longer reasonably available to the Non-parties. *See* ECF No. 80 at 32-34.

36

In light of this Court's determination that Viva implicitly waived the attorney-client privilege concerning SRZ's pre-acquisition due diligence, the Court finds that good cause exists to order the Non-parties' Rule 30(b)(6) re-deposition.  At the time of Nelson's deposition, SRZ asserted privilege objections that they believed were proper.  However, intervening circumstances—namely, this Court's finding of waiver—now warrant a re-deposition that is limited to the topic of SRZ's pre-acquisition due diligence.  *See Rodriguez*, 2005 WL 8165155, at *2 (permitting re-deposition where "intervening circumstances subsequent to the first deposition have rendered that single deposition insufficient or where new subject matter has recently come to light").

The Court further finds that Nelson inadequately prepared for his deposition.  Although perfection is not required, Rule 30(b)(6) does require "a good faith effort on the part of the designate to find out the relevant facts—to collect information, review documents, and interview employees with personal knowledge just as a corporate party is expected to do in answering interrogatories."  *Graco, Inc. v. PMC Glob., Inc.*, No. 08-cv-1304, 2011 WL 868930, at *13 (D.N.J. Feb. 14, 2011) (citation omitted).  Nelson, however, showed a lack of preparation by responding to specific Policy questions with generalized answers as to Preston's due diligence processes on "every policy" and by neglecting to speak to the individuals that personally reviewed the Policy documents.  ECF Nos. 79 at 8-9, 80 at 33-34.  For example, Nelson stated that he could only testify to Preston's routine actions because "[o]ur organization doesn't recall exactly what it did on the particular Goldman policy[.]"  ECF No. 79-2 at

87:20-24, 89:23-24 ("I have no reason to doubt we didn't do it because we do it on every policy."), 105:4-9 ("[I]t would have been part of our practice to at least read the exhibits to this agreement . . . [s]o it would shock me if we didn't read it."), 109:10-18 (same). Nelson was also unable confirm whether Jennifer Aukes, a Preston employee, had reviewed a specific Policy document despite the document being clearly stamped: "Confidential, Jennifer Aukes." *Id.* at 100:3-102:1. And when asked how he prepared for the deposition on the listed topics, Nelson stated that he "spent significant time looking through a binder of documents that was really thick[.]" *Id.* at 88:1-19. This limited preparation fails to satisfy the requirements for a Rule 30(b)(6) deponent. *See Graco, Inc.*, 2011 WL 868930, at *13.

Furthermore, the fact that certain institutional knowledge may no longer exist does not relieve Nelson of his duty as a Rule 30(b)(6) designee. *See Yerkes*, 2019 WL 12056384, at *3 (quoting *Great Am. Ins. Co. of New York v. Vegas Const. Co.*, 251 F.R.D. 534, 539 (D. Nev. 2008)). Indeed,

> it is not uncommon to find that a corporation no longer employs individuals who have memory of distant events, or to find that individuals with knowledge are deceased. These problems do not relieve a corporation from preparing its Rule 30(b)(6) designee to the extent matters are reasonably available, whether from documents, past employees, or other sources.

*Id.* Keeping these principles in mind when preparing for the re-deposition, Nelson, or the Non-parties alternative Rule 30(b)(6) designee, shall endeavor to make a good faith effort to educate himself/herself on the specificities of the Policy. That said, the Court does not find that Nelson was so woefully unprepared to warrant the imposition

of sanctions under Rule 37(d).  *See Black Horse Lane Assocs., L.P.*, 228 F.3d at 304-05 (imposing Rule 37(d) sanctions where the deponent provided no meaningful testimony and was unaware that he was being deposed as a Rule 30(b)(6) witness); *Yerkes*, 2019 WL 12056384, at *7 (granting re-deposition, but denying request for Rule 37(d) sanctions where the Rule 30(b)(6) witness "provided responsive testimony as to a number of the topics" and holding that "[t]o warrant sanctions under . . . Rule 37(d), the deponent must be so uncooperative that the deponent effectively fails to appear for the deposition").

As to Columbus Life's request that Wilmington/Viva pay for the costs associated with the re-deposition, the Court finds such relief unwarranted.  Nelson's deposition was frustrated primarily by SRZ's objections as to privilege, which is expressly permitted by the Rule 16 scheduling order.  *See* ECF No. 29 ¶ 4.  Although SRZ raised objections on other grounds, the Court does not find that SRZ's conduct was so inappropriate to warrant Rule 37(d) sanctions.  *Compare Deville v. Givaudan Fragrances Corp.*, No. 08-cv-2034, 2010 WL 2232718, at *9 (D.N.J. June 1, 2010) (affirming the magistrate judge's order granting Rule 37(d) sanctions where counsel's conduct rendered the results of the deposition completely useless).  The Court does, however, remind counsel to abide by Rule 30(c)(2) and the Rule 16 scheduling order when asserting objections during the re-deposition.  *See* ECF No. 29 ¶ 4 ("No objections to questions posed at depositions shall be made other than as to lack of foundation, form, or privilege . . . .  No instruction not to answer shall be given unless a privilege is implicated.").  Accordingly, the Court holds that the Non-parties' Rule

30(b)(6) witness must be re-deposed; however, no additional sanctions are warranted.

## IV.     CONCLUSION

For the reasons set forth above, Columbus Life's motion to compel the production of documents from, and the re-deposition of the corporate designee of, the Non-parties is **GRANTED IN PART** and **DENIED IN PART**.  An appropriate Order accompanies this Opinion.


HON. JOSÉ R. ALMONTE
UNITED STATES MAGISTRATE JUDGE

Dated: June 16, 2023